# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ROBERT VOELKER,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:22-cv-00301-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

_____/

## I.    INTRODUCTION

On March 14, 2022, Plaintiff Matthew Robert Voelker ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on May 1, 1966, has an 11th grade education, and previously worked as

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 10.)

a handyman and building maintenance repairman. (Administrative Record ("AR") 22, 33, 47, 58, 161, 167, 183, 195, 203.) Plaintiff protectively filed a claim for DIB payments on April 8, 2020, alleging he became disabled on August 25, 2015, due to osteomyelitis, chronic back pain, degenerative lower lumbar [spine], extreme arthritis, and high blood pressure. (AR 51, 58, 161, 166, 195, 203.)

**A.     Relevant Evidence of Record[2]**

An MRI of Plaintiff's spine performed in February 2015, following lumbar spine surgery, showed disc desiccation and moderate disc space narrowing at L4-5 with associated endplate discogenic signal changes and postsurgical changes related to a prior laminectomy. (AR 545.) Mild bilateral facet hypertrophy was noted at L4-L5, with broad-based posterior disc extrusion and moderate bilateral neural foraminal narrowing. (AR 986.) No evidence of spinal stenosis was found. (AR 986.) In March 2015, Plaintiff presented for a neurosurgery consultation, complaining of chronic back pain that started with a motorcycle crash when he was much younger. (AR 390.) Plaintiff reported that at the time of his surgery he experienced bilateral lower extremity weakness. (AR 390.) Upon examination, Plaintiff had no radicular symptoms, good strength in his bilateral lower extremities, no problems with walking or coordination, and no numbness or tingling. (AR 390, 392.) Repeat MRI imagining showed "good decompression at L4-5 with no compression of the neural elements or deformity." (AR 392.) Plaintiff was advised that "his lower back pain was likely related to mechanical lower back pain, as he has had no recurrence of weakness or radicular symptoms." (AR 392.) The provider indicated that there "was no need for additional surgery" and that they "would treat his back conservatively with pain management consult and physical therapy," which had not been tried recently. (AR 392.)

Plaintiff complained of ringing in his ears, chest pain, and dizziness in April 2015. (AR 368.) He reported that he was diagnosed with lymphoma in 2012 and completed chemotherapy that same year. He stated he was "doing well" but "continu[ed] to feel slightly nauseous daily since chemotherapy completion." (AR 368.) His physical examination was normal, with no edema or

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

tenderness, equal motor strength, and full active range of motion.  (AR 369.)

In September 2015, Plaintiff complained to internal medicine physician Avni Amin, M.D., of low back pain.  His physical examination was normal.  (AR 372–73.)  It was noted he was taking ibuprofen and Norco for his pain.  (AR 372.)  Plaintiff presented for a follow up appointment with Dr. Amin in October 2016.  He complained of low back pain that is worse in cold weather and at nighttime.  (AR 353.)  He reported that he was taking Norco and his back surgery "worked well," but noted that he "cannot lift things still."  (AR 353.)  Plaintiff described the pain as "more of an ache in the whole back," with no radiation of the pain down his legs.  (AR 353.)  His physical examination was normal.  (AR 354.)

Plaintiff reported to Dr. Amin that he was having "more flares" of back pain in September 2017, and noted that recent weight gain was "putting more stress on his back."  (AR 348.)  He was taking ibuprofen and Norco "daily."  (AR 348.)

In June 2020, Dr. Amin completed a "Questionnaire."  (AR 980.)  He found that Plaintiff's "primary impairments" were lower back pain, weakness, and decreased mobility.  According to Dr. Amin, Plaintiff could: carry, but not lift, five pounds; sit for one hour without rest or support; stand and/or walk for 30 minutes without rest or support; sit four hours; and, over the course of an eight-hour workday, sit for a total of four hours "on and off with many breaks" and stand and/or walk a total of less than two hours.  (AR 980.)  Dr. Amin also opined that Plaintiff had to lie down most of the workday to relieve pressure to his back.  (AR 980.)  The objective findings upon which Dr. Amin based his decision were "decreased range of motion" and "tenderness."  (AR 980.)  Dr. Amin further opined that Plaintiff had been disabled to this degree since 2013.  (AR 980.)

Dr. Amin completed the same "Questionnaire" in February 2021.  (AR 1107.)  Plaintiff's primary impairments were listed as "decreased range of motion" and "pain."  (AR 1107.) According to Dr. Amin, Plaintiff could: lift and carry less than 10 pounds; sit, stand, and/or walk for less than 30 minutes without rest or support; and, over the course of an eight-hour workday, sit, stand, and/or walk for a total of two to four hours.  (AR 1107.)  Dr. Amin also opined that Plaintiff had to lie down and use heat most of the workday to relieve pressure to his back.  (AR 1107.)  The objective findings upon which Dr. Amin based his decision were "tenderness" and "decreased

motion." (AR 1107.)  Dr. Amin further opined that Plaintiff had been disabled to this degree for "3 years." (AR 1107.)

## B.     Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on May 15, 2020, and again on reconsideration on July 2, 2020. (AR 15, 69–72, 83–89.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 90–132.) The ALJ conducted a hearing on April 13, 2021. (AR 28–50.) Plaintiff appeared telephonically at the hearing with his attorney and testified as to his alleged disabling conditions. (AR 33–45.)

A VE also testified at the hearing. (AR 47–49.) The VE testified that Plaintiff had past relevant work as: a handyman, Dictionary of Operational Titles ("DOT") code 869.381.010, with a medium exertional level (heavy as performed) and a specific vocational preparation (SVP)[3] of 7; as a building maintenance repairperson, DOT code 899.381-010, SVP 7, medium exertional level (heavy as performed); a composite job of trade show sales, DOT code 297.367-010, SVP 5, and tractor trailer truck driver, 904.383-Jl0, SVP 4, heavy exertional level; and as a furniture mover, DOT code 904.687-010, SVP 3, very heavy exertional level (heavy as performed). (AR 47–48.)

The ALJ asked the VE a hypothetical question in which the VE was to consider a person of Plaintiff's age, educational level, and work experience, who is limited to light work, with the additional limitations of frequently climbing ramps or stairs; occasionally climbing ladders, ropes or scaffolds; occasionally stooping; frequently kneeling; occasionally crouching; and occasionally crawling. (AR 48.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other light work with SVP 2 in the national economy such as marker (DOT code 209.587-034), and cafeteria attendant (DOT code 311.677-010). (AR 48–49.)

The ALJ posed a second hypothetical in which the first individual was limited to sedentary

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

4

work. (AR 49.) The VE testified that there would be no work such an individual could perform. (AR 49.) In response to a third hypothetical posed by the ALJ, the VE testified that a person who had to take breaks and lie down after standing or walking for a period of time and were off task 20% of the time (or 12 minutes per hour) on an ongoing basis as a result could perform no work. (AR 49.)

**C.    The ALJ's Decision**

In a decision dated June 3, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–24.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 17–23.) The ALJ decided that Plaintiff last met the insured status requirements of the Act on December 31, 2017, and had not engaged in substantial gainful activity since August 25, 2015, the alleged onset date (step one). (AR 17.) At step two, the ALJ deemed Plaintiff's "degenerative disc disease with history of discectomy in 2013" severe. (AR 17–18.) According to the ALJ, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform less than the full range of light work as defined in 20 CFR [§] 404.1567(b). He can frequently climb ramps/stairs, occasionally climb ladders, ropes scaffolds, and stoop; frequently kneel; and occasionally crouch and crawl.

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

5

(AR 18–22.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 19.)

The ALJ determined that Plaintiff could not perform his past work (step four) through the date last insured, but that, given his RFC, he retained the capacity to perform a significant number of other jobs in the local and national economies, including marker and café attendant (step five). (AR 22–23.) Ultimately, the ALJ concluded that Plaintiff was not disabled at any time from August 25, 2015, the alleged onset date, through December 31, 2017, the date last insured. (AR 23.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 10, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe

6

> impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*;

*see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ erred, *inter alia*, in failing to evaluate the persuasiveness of Dr. Amin's two medical opinions given in 2020 and 2021. (*See* Doc. 13 at 11–14; Doc. 18 at 4.) As to the 2020 opinion, the Court agrees. Because further proceedings are required regarding Dr. Amin's 2020 opinion, the Court does not reach Plaintiff's additional assertion of error that his

subjective-symptom-testimony was improperly discounted.[5]

**A.     Legal Standard**

Plaintiff's claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792. "Supportability means the extent to which a

---

[5] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)) "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

> As the Ninth Circuit also observed,
>
> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Lastly, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. §§ 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Amin's opinions.

**B.   Analysis**

In weighing Dr. Amin's 2020 and 2021 opinions related to Plaintiff's physical functioning, the ALJ reasoned as follows:

> The opinions of Dr. Amin contained in Exhibits 3F and 7F were considered; however, these were submitted in June 2020 and February 2021, 3-4 years after the date last insured. Therefore, his opinions of what [Plaintiff] was capable of performing is not during the period at issue. In addition, in Exhibit 7F, Dr. Amin opined that [Plaintiff's] disability started three years prior to the 2021 opinion, which would be approximately 2018. Therefore, these opinions are not persuasive during the period at issue.

(AR 21.)

As stated by the Ninth Circuit: "We think it is clear that reports containing observations

made after the period for disability are relevant to assess the claimant's disability.  It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citations omitted). *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1228–29 (9th Cir. 2010) ("[E]vidence post-dating the [date last insured] is probative of . . . pre-[date last insured] disability."); *Lester v. Chater*, 81 F.3d 821, 832) (9th Cir. 1995) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'") (quoting *Smith*, 849 F.2d at 1225).  However, "it is well-established that an ALJ may reject a medical opinion, even that of a treating doctor, where it was completed . . . years after claimant's date last insured and was not offered as retrospective analysis." *Morgan v. Colvin*, No. 6:12-CV-1235-AA, 2013 WL 6074119, at *10 (D. Or. Nov. 13, 2013) (citation omitted). *See also Boucher v. Colvin*, 2013 WL 3778891, *2–3 (W.D. Wash. July 18, 2013) ("while post-[date last insured] evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective") (citing *Smith*, 849 F.2d at 1225–26).

With respect to Dr. Amin's 2021 opinion, Plaintiff does not establish that the opinion was offered retrospective to a time prior to Plaintiff's date last insured of December 31, 2017.  Indeed, as the ALJ noted (AR 21), Dr. Amin's 2021 opinion expressly states that the impairments found therein had existed for "3 years," or since February 2018 (AR 1107).  Thus, the ALJ did not err in deeming Dr. Amin's 2021 opinion not persuasive during the relevant period. *See Daryl V. v. Saul*, No. 4:19-CV-05036-MKD, 2019 WL 7819803, at *5 (E.D. Wash. Oct. 31, 2019), *aff'd sub nom. Vooge v. Saul*, 840 F. App'x 253 (9th Cir. 2021) ("The ALJ reasonably found that Dr. Hamilton's opinion was entitled to less weight because it focused on Plaintiff's limitations after the date last insured.  This was a specific and legitimate reason to discredit Dr. Hamilton's opinion."); *Capobres v. Astrue*, No. CV 1:09-682-REB, 2011 WL 1114256 (D. Idaho Mar. 25, 2011) (ALJ did not err in rejecting opinion because it was outside relevant period and not controlling or persuasive before the date last insured, nearly two and half years earlier, where the opinion was not offered as retrospective to the relevant period).

Dr. Amin's 2020 opinion, however, is different.  That opinion was retrospectively offered,

as Dr. Amin indicates that the impairments found therein had existed since 2013. (AR 980). As such, it is relevant to the period at issue, and the persuasiveness of the opinion, specifically its supportability and consistency, should have been assessed. *See Turner,* 613 F.3d at 1228–29. The ALJ's failure to do so is error.[6] *See, e.g., Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017) (where medical opinions "refer back" to the same chronic condition and symptoms discussed in his physician's opinion "from several years prior," the "fact that those opinions were issued significantly after [the plaintiff's] [date last insured] does not undercut the weight those opinions are due").

The error was not harmless because it was not "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. If, after evaluating Dr. Amin's 2020 opinion, the ALJ assesses more restrictive RFC due to the opined sitting, standing, and/or walking limitations, such would influence the ultimate nondisability determination (*see* AR 49 (testimony by the VE that limitations to sedentary work or a need to take breaks and lie down after standing or walking for a period of time would result in no work available to Plaintiff)).

**C.     Remand**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Circ. 2014) (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id*. at 1100–01 (citations omitted); *see also id*. at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a

---

[6] The Acting Commissioner devotes a portion of its brief to addressing why Dr. Amin's opinions were neither consistent with nor supported by the medical record. (*See* Doc. 17 at 7–8.) But the ALJ did not undertake this assessment in the first place, and the Court's review is limited to the rationale provided by the ALJ. As such, the Court does not consider post-hoc rationalizations and inferences advanced by the Acting Commissioner to justify the ALJ's rejection of Dr. Amin's 2020 opinion . *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs*., 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id*. at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id*. (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful.  On remand, the ALJ is directed to evaluate the persuasiveness of Dr. Amin's 2020 opinion and re-assess Plaintiff's RFC, including all his relevant limitations.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.

The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Matthew Robert Voelker and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **April 24, 2023**                         /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE

13